William G. Passannante
Steven J. Pudell
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1233



Attorneys for Defendant John Testa

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GHEEVARGHESE THANKACHAN,<br><br>                              Plaintiff,<br><br>vs.<br><br>PEEKSKILL HOUSING AUTHORITY, JOHN TESTA, Mayor, City of Peekskill, LEESTHER BROWN, ERIC HYNES, SANDRA BOND, LORRAINE ROBINSON sued in their official and individual capacities,<br><br>                              Defendants. | No. 07-CV-8332 (PED)<br>White Plains |
| JOHN TESTA, former Mayor, City of Peekskill,<br><br>                              Third-Party Plaintiff,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA<br><br>                              Third-Party Defendant. | **THIRD PARTY COMPLAINT** for<br><br>**DECLARATORY JUDGMENT; and BREACH OF CONTRACT** |

Third-Party Plaintiff, John Testa ("Testa") sued in his capacity as Mayor (former) of the City of Peekskill ("Peekskill"), by his attorneys, as and for his complaint against National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), alleges as follows:

njdocs-56997.2

## INTRODUCTION

1. This controversy arises out of National Union's failure and refusal to honor all of the its obligations under an insurance policy it sold to Peekskill to pay for all defense costs and indemnity costs, already incurred or to be incurred in the future by Testa as a defendant in the underlying litigation styled <u>Thankachan v. Peekskill Housing Authority, et al.</u> (the "Underlying Action"), that is the original part of this action. A copy of the Thankachan Complaint in the Underlying Action is attached as Exhibit A.

2. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, Third-Party Plaintiff Testa also seeks in this action a declaration concerning Testa's rights under the National Union insurance policy.

## PARTIES

3. Third-Party Plaintiff John Testa was the Mayor of the City of Peekskill at the time relevant to this action and is an "Insured" under the insurance policy.

4. Upon information and belief, Third-Party Defendant National Union Fires Insurance Company of Pittsburgh, PA Defendant National Union is a corporation organized and existing under the laws of the State of Pennsylvania and has its principal place of business in New York, New York.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1367 in that there is supplemental jurisdiction. 28 U.S.C. § 1367 provides for supplemental jurisdiction over additional parties who were not parties to the original action regardless of whether they are diverse from the City of Peekskill.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

njdocs-56997.2

## BACKGROUND FACTS

### The Underlying Thankachan Action

7. Plaintiff Gheevarghese Thankachan sued Testa in his official capacity as Mayor of Peekskill and other defendants under 42 U.S.C. § 1983 and 42 U.S.C. § 1981 alleging that Plaintiff was wrongfully terminated from his position as Executive Director of the Peekskill Housing Authority. Thankachan Complaint ¶¶ 37–42.

8. Plaintiff alleged that he began working for the Peekskill Housing Authority in 1983 and became executive director in 2003. Thankachan Complaint ¶¶ 7, 9.

9. Plaintiff does not allege that he is, or was, employed by the City of Peekskill.

10. Peekskill Housing Authority operates through a Board of Commissioners whose members are appointed by the Mayor of Peekskill.

11. During his tenure as mayor, Testa appointed defendants Brown, Bond, Hines and Robinson to the Board of Commissioners. Defendants Hines, Bond and Robinson have been dismissed with prejudice from this case.

12. Testa did not serve on the Board of Commissioners.

13. Plaintiff alleges that Testa, in his role as the Mayor of Peekskill, violated the First Amendment of the Constitution and expressed hostility toward plaintiff because "plaintiff was associating with members of the Democratic Party." Thankachan Complaint ¶ 29.

14. Plaintiff further alleges that Testa, in his role as the Mayor of Peekskill, "expressed hostility toward Plaintiff and appointed Housing Authority members expressly bent on ending plaintiff's tenure for political reasons." Thankachan Complaint ¶ 29.

15. Plaintiff further alleges that "[b]y pressuring his appointees to violate the First Amendment by firing plaintiff because of his perceived political beliefs, defendant Testa, in his role as the Mayor of Peekskill, violated the first Amendment to the United States Constitution." Thankachan Complaint ¶ 40.

16. Plaintiff alleges that defendant Brown, appointed to the board by Mr. Testa, engaged in acts that reflected racial animus toward him because he was Indian – born in India of Indian parents. Thankachan Complaint ¶¶ 37–42.

17. Plaintiff alleges that he was terminated from employment by the Board on September 13, 2007. Thankachan Complaint ¶ 16.

### The National Union Insurance Policy

18. National Union sold to Peekskill a Public Official and Employment Practices Liability Policy, Policy No. 707-86-30 (the "Policy").

19. The Policy has a Policy Period of December 31, 2007 to December 31, 2008. The Policy was a "Replacement of Policy Number 966-08-16" for the previous policy period.

20. The Policy stated as follows: "[T]he Company and the Insured agree as follows: INSURING AGREEMENTS: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pays as Damages resulting from any Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured in the performance of duties for the Public Entity."

21. The Policy defined "Insured" as "the Public Entity and (1) all persons who were, now are, or shall be lawfully elected or appointed officials or employees while acting for or on behalf of the Public Entity."

22. The "Public Entity" is defined in the policy as "The City of Peekskill."

23. "Wrongful Act" is defined in the policy as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or Employment Practices Violation by an Insured solely in the performance of duties for the Public Entity."

24. Endorsement Number 10 to the Policy entitled "Employment Practice Violations Endorsement – Law Enforcement" states that Exclusions Paragraph N is replaced with the following "Arising Out Of the operation of or activities of any schools, airports, transit authorities, hospitals, clinics, nursing homes or other health care operations, utilities, housing authorities, jails or detention facilities or firefighting authorities unless specifically included in Item 7 of the Declarations."

25. By letter dated April 2, 2008, Peekskill and Testa provided timely and proper notice to National Union of Plaintiff's claims against Testa.

26. By letter dated April 11, 2008, National Union denied coverage arguing solely that the claims against Testa are excluded by Exclusion (n) of the Public Officials and EPL Policy, which purports to exclude coverage for claims "arising out of the operation or activities of . . . housing authorities."

27. By letter dated May 31, 2011, Peekskill and Testa reiterated their demand for coverage and requested that National Union immediately accept the defense and indemnity of Testa in this action

28. By letter dated July 5, 2011, National Union responded and declined to accept Testa's defense and disclaimed indemnity coverage, again, relying solely on Exclusion (n) of the Public Officials and EPL Policy.

## COUNT I

### (Declaratory Relief)

29. Testa repeats and re-alleges the allegations of paragraphs 1 through 28 as if fully set forth herein.

30. Although provided with timely notice of the Underlying Action, National Union (i) wrongly refused to defend or reimburse defense costs or indemnify Testa, in his role as the Mayor of Peekskill, for any amounts incurred, or to be incurred, by Testa, in his role as the Mayor of Peekskill, in connection with the Underlying Action; or (ii) failed to acknowledge any duty to defend Testa or reimburse defense costs in connection with the Underlying Action under the Policy.

31. National Union's defense to coverage for the Underlying Action is without factual or legal merit.

32. By reason of the foregoing, an actual and justiciable controversy exists between Testa and National Union regarding National Union's obligation to defend or reimburse defense costs and indemnify Testa in connection with the Underlying Action.

33. Accordingly, Testa seeks a judicial declaration from this Court that: (1) National Union is obligated to defend Peekskill and reimburse defense costs in connection with any claims arising out of the Underlying Action; and (2) National Union is obligated to indemnify Testa for any amounts incurred by Testa as a result of the Underlying Action.

## COUNT II

### (Breach of Contract)

34. Testa repeats and re-alleges the allegations of paragraphs 1 through 33 as if fully set forth herein.

njdocs-56997.2

-7-

35. National Union through its duly authorized agents and employees, made unambiguous written promises in the form of a written insurance contract sold to Peekskill, which established an agreement for general comprehensive or law enforcement liability coverage.

36. Peekskill accepted National Union's offers and provided monetary consideration in the form of annual premiums to National Union in exchange for their promises.

37. National Union's policy was in full force and effect at all pertinent times.

38. Peekskill and Testa have performed all of their duties consistent with the terms and conditions of the Policy.

39. To date, National Union has breached the Policy by refusing to honor its terms, and wrongly refusing to defend, reimburse defense costs, or indemnify Testa in connection with the Underlying Action and Testa has sustained or will sustain damages as a result.

40. By reason of National Union's breach, National Union is liable to Testa for damages, including but not limited to compensatory and consequential damages, and reasonable attorneys' fees and expenses in amounts as yet to be ascertained and determined at trial.

## DEMAND FOR JURY TRIAL

Testa hereby demands trial by jury of any and all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Testa respectfully request that this Court enter judgment in his favor and against National Union as follows:

1. With respect to Count I (Declaratory Judgment), a declaration that National Union is obligated to defend or has a duty to reimburse defense costs and to indemnify

Testa in the Underlying Action in accordance with the terms of the Policy, plus pre- and post-judgment interest;

2. With respect to Count II (Breach of Contract), an award against National Union of compensatory, direct and consequential damages, including costs of suit, attorneys' fees and costs, in an amount to be determined at trial, plus pre- and post-judgment interest; and

3. All other relief in law or equity that this Court may deem just and appropriate.

Dated: October 25, 2011

**ANDERSON KILL & OLICK, P.C.**

By: _____
William G. Passannante
Steven J. Pudell
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 278-1000
Facsimile: (212) 278-1233

*Attorneys for Third-Party Plaintiff/Defendant John Testa*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GHEEVARGHESE A. THANKACHAN,

    Plaintiff,

vs.

PEEKSKILL HOUSING AUTHORITY,
JOHN TESTA, MAYOR, City of Peekskill,
LEESTHER BROWN, ERIC HINES,
SANDRA BOND, LORRAINE ROBINSON,
sued in their official and individual capacities,

    Defendant.

-----------------------------------------------------------x

**COMPLAINT**

JUDGE CONNER

**07 CIV. 8332**

By and through his counsel, Michael H. Sussman, plaintiff alleges as against defendants as follows:

I. **PARTIES**

1. Plaintiff, Gheevarghese A. Thankachan, is a resident of the County of Westchester and an adult of legal age. He is of East Asian descent.

2. Defendant Peekskill Housing Authority is a municipal corporation organized pursuant to the laws of the State of New York and conducts business within this judicial district.

3. Defendant John Testa is the Mayor of the City of Peekskill and appoints and may remove members of the City of Peekskill Housing Authority. He is sued for actions taken under color of state law.

4. Defendant Leesther Brown is acting chair of the Peekskill Housing Authority. She is sued in her official and individual capacities for actions taken under color of state law.

5. Defendants Hines, Bond and Robinson are all members of the Peekskill Housing

Page 1 of 6

Authority sued in their official and individual capacities for actions taken under color of state law.

## II. JURISDICTION

6. As plaintiff asserts that defendants have violated federal and state law, this Honorable Court has jurisdiction pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4), 1367 and 42 U.S.C. secs. 1983 and 1988.

## III. FACTUAL ALLEGATIONS

7. Plaintiff became Executive Director of the Peekskill Housing Authority in April 2003.

8. Before assuming this position, he served as staff attorney for the Housing Authority beginning in 1998.

9. In all, plaintiff has worked for the Housing Authority since 1983.

10. Plaintiff was born in India of Indian parents. His first language was Malayalam. He is of dark complexion.

11. Plaintiff has always well performed the duties and responsibilities associated with the positions he has held at the Housing Authority.

12. In October 2006, HUD recognized plaintiff with an award for "exemplary service to our residents."

13. For 2006, HUD scored plaintiff's management operation 29 out of a maximum score of 30.

14. In the spring of 2007, defendant Brown stated that plaintiff was allowing too many Hispanics to enter the hosing authority projects.

15. Plaintiff rebuked defendant Brown for this racist statement.

16. On or about September 13, 2007, defendants Brown, Hines, Bond and Robinson voted to terminate plaintiff's employment.

17. In informing plaintiff of this action, these defendants provided no reason for his termination.

18. The aforecited defendants voted to terminate plaintiff in a closed executive session, not a public meeting as is required.

19. After informing plaintiff of his termination and failing to provide any reason therefor, defendant Brown publicly announced a series of false reasons for this adverse action.

20. Specifically, Brown advised the media that plaintiff was terminated because he had failed to evict a "sex offender" and allowed convicted drug felons to remain in authority buildings.

21. Both of these reasons, as well as all others adduced by the defendant Brown, were baseless, known to be baseless when circulated and simply intended to sully the exceptional reputation of the plaintiff.

22. Twice before in 2007, animated as set forth below, defendants sought to end plaintiff's employment with the Housing Authority, previously suspending him for the alleged purpose of investigating his performance in the late spring/summer 2007.

23. On this latter occasion, the Authority hired a New York law firm for the express purpose of determining whether grounds existed to terminate plaintiff.

24. Upon information and belief, this law firm found no such grounds.

25. To insure the integrity of public housing programs and the use of federal funds, in 2007, plaintiff revealed to HUD several examples of misconduct on the part of members of the

Housing Authority, including the granting of a contract without proper bidding for the installation of surveillance cameras to a company closely associated with the Mayor and Brown's discriminatory remarks concerning Hispanic tenants.

26. On several occasions in 2006-07, defendant Brown made remarks and/or comments deprecating plaintiff's national origin.

27. After being informed of no reason for his termination and then reading publicity about the alleged reasons for this action, through counsel, plaintiff requested a name clearing hearing.

28. Defendants have provided no name clearing hearing of any sort.

29. Defendants terminated plaintiff for several inter-related reasons:

a) first, defendant Testa, the Republican Mayor who appoints housing authority members, came to believe that plaintiff was associating with members of the Democratic party. On this basis, he expressed hostility toward plaintiff and appointed Housing Authority members expressly bent on ending plaintiff's tenure for political reasons.

b) second, defendant Brown became hostile toward plaintiff both because of what she believed was his political affiliation and because he failed and refuse to engage in discriminatory practices in violation of the Fair Housing Act.

c) third, defendant Brown harbored discriminatory animus toward the plaintiff on the basis of his national origin and influenced the other individual defendants who were members of the board in a similar manner.

30. Under the terms of his contract with the Housing Authority, plaintiff was entitled to due process before his termination like those afforded by section 75 of New York State Civil

Service Law.

31. Such contract created an enforceable property interest in pre-deprivation due process.

32. Defendant provided no pre-deprivation due process.

33. Since his termination, plaintiff has not found comparable employment.

34. Plaintiff has suffered compensable non-pecuniary damages as a consequence of his termination.

35. State court affords plaintiff no adequate remedy in law or in equity.

36. Defendant's acts and omissions as to plaintiff have been intentionally and malicious.

### CAUSES OF ACTION

37. Plaintiff re-alleges each prior paragraph as if fully restated herein.

38. By discriminating against plaintiff in the terms and conditions of his employment on the basis of his race, defendants all violated 42 U.S.C. sec. 1981 as amended.

39 By terminating plaintiff because of his perceived political affiliation, defendants each violated the First Amendment of the United States Constitution as made actionable by and through 42 U.S.C. sec. 1983.

40. By pressuring his appointees to violate the First Amendment by firing plaintiff because of his perceived political beliefs and associations, defendant Testa violated the First Amendment to the United States Constitution as made actionable against him pursuant to 42 U.S.C. sec. 1983.

41. By failing to provide plaintiff a name-clearing hearing after publicly deprecating him on behalf of the Peekskill Housing Authority at the time of plaintiff's termination, defendants deprived plaintiff of a liberty interest without due process of law in violation of the 14th

Amendment, as made actionable against defendant by 28 U.S.C. sec. 1983.

42. By failing to provide plaintiff due process before terminating him and so depriving him of property, defendants violated the due process clause of the 14th Amendment, as made actionable against defendant by 28 U.S.C. sec. 1983.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court:

a) accept jurisdiction over this matter;

b) empanel a jury to fairly hear and decide this matter;

c) award plaintiff compensatory damages as against each defendant;

d) award punitive damages to the plaintiff and against each individual defendant;

e) order defendant Authority to restore plaintiff to his prior position with full restoration of benefits;

f) enter any other relief it deems legal and equitable.

Respectfully submitted,

Michael H. Sussman [3497]

SUSSMAN & WATKINS
PO Box 1005
Goshen, NY 10924
(845)-294-3991

Counsel for Plaintiff

Dated: 24 September 2007
       Goshen, New York