UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GHEEVARGHESE A. THANKACHAN,

                              Plaintiff,

        vs.                                                  07 CV 8332 (PED)

PEEKSKILL HOUSING AUTHORITY,
LEESTHER BROWN, sued in her
individual capacity,

                              Defendants.

-------------------------------------------------------X

### DECLARATION OF SCOTT A. KORENBAUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES

        SCOTT A. KORENBAUM declares, pursuant to 28 U.S.C. § 1746 and under

penalty of perjury, as follows:

        1.      I am an attorney in good standing, admitted to practice law in the States

of New York and New Jersey, and in the United States District Courts for the Southern

and Eastern Districts of New York, and the District of New Jersey. I am also admitted to

practice before the United States Court of Appeals for the Second Circuit and the United

States Supreme Court. I was admitted to practice law in the State of New York in April

1989. I have been practicing in the United States District Court for the Southern and

Eastern Districts of New York since July 1989 and May 1990, respectively.

        2.      At the request of Christopher D. Watkins, Esq., I submit this declaration in

connection with plaintiff's application for attorneys' fees. I understand from Mr.

Watkins that he seeks on behalf of his client an award of $375/hr. for the work he has

performed in this litigation. For the reasons I discuss below, plaintiff should be

compensated for the work performed by Mr. Watkins on his behalf at the rate of $375/hr.[1]

      3.    In connection with this declaration, I have spoken at length with Mr. Watkins regarding the procedural history of the litigation, as well as the results obtained at trial. As Mr. Watikins and I are also well-known appellate practitioners in the civil rights arena, and members of both the New York Chapter of the National Employment Lawyers Association and the National Police Accountability Project of the National Lawyers' Guild, I have also spent considerable time conferring with him regarding issues of interest in the areas of employment discrimination and police misconduct litigation.

A. Counsel's Requested Hourly Rate Of $375 Is Eminently Reasonable.

      4.    Since October 2000, I have maintained my own practice of law in the State of New York, County of New York. From November 2000 until June 30, 2004, I maintained my office at 225 West 34th Street, Suite 1000, in Manhattan. Since June 30, 2004, I have maintained my office at 111 Broadway, Suite 1305, in Manhattan.

      5.    In supporting Mr. Watkins's requested hourly rate of $375, I have assessed the rates of other attorneys who have been admitted to the Bar for 15 years, and who have attained a similar level of expertise in the area of civil rights litigation. Following two years of employment with Shereff, Friedman, Hoffman & Goodman, I joined the public sector. From July 1990 to July 1995, I served as an Assistant

---

[1] I also understand from Mr. Watkins that his partner, Michael H. Sussman, seeks to be compensated for the work he performed on plaintiff's behalf at the rate of $450/hr. While I know of Mr. Sussman because of his outstanding reputation, I have no personal relationship with him. As such, I limit my declaration to the work performed by Mr. Watkins.

Corporation Counsel with the General Litigation Division of the New York City Law Department.  During my five-year tenure with the Law Department, I handled numerous actions involving claims of employment discrimination, police misconduct and other claims of constitutional violations that were brought against the City of New York and its employees.  Given the General Litigation Division's structure at the time, I handled each matter from inception through trial (but not appeal).

6.      I re-entered the realm of private practice in 1995.  Between 1995 and October 2000, I worked for a number of firms.  Regardless of my employer, I continued to specialize in the area of employment discrimination, police misconduct and other civil rights-related litigation.

7.      Since late October 2000, when I began my own practice, I have continued to specialize in the area of civil rights litigation in general, and employment discrimination and police misconduct in particular.  In addition to my private practice, I was a Professor of Legal Writing at the Benjamin N. Cardozo School of Law for approximately six and a half years.  I also volunteer my services during the School's Intensive Trial Advocacy Program.

8.      I am a member of the Pro Bono Panel for the United States Court of Appeals for the Second Circuit.  I am also currently on the employment law panel of the National Employment Lawyers Association.

9.      My experience, at both the appellate and trial levels, in handling claims of employment discrimination, police misconduct and other civil rights litigation includes the following matters, among others:

A.      *Coe v. Town of Blooming Grove*, 429 Fed. Appx. 55 (2d Cir. 2011)

-3-

(successfully defended appeal involving claims that plaintiff's First Amendment rights were violated when the municipalities denied her right to hold an anti-war demonstration in a public/limited public forum).

B.    *Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010) (successfully argued that the district court erred in admitting unduly prejudicial opinion testimony in an action involving claims of police misconduct).

C.    *Coggins v. County of Nassau*, 362 Fed. Appx. 224 (2d Cir. 2010) (on interlocutory appeal involving defendant's claim of absolute immunity, successfully argued that the district court did not err in denying the police officer's motion to dismiss), *cert. denied*, 2011 U.S. LEXIS 673 (U.S., Jan. 18, 2011).

D.    *Luca v. County of Nassau*, 344 Fed. Appx. 637 (2d Cir. 2009) (successfully argued, among other things, that the district court did not abuse its discretion in fashioning an award of front pay spanning twenty-five years).

E.    *Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007) (successfully argued that the District Court erred in granting judgment as a matter of law to defendants on the grounds of qualified immunity in an action brought pursuant to 42 U.S.C. § 1983 involving claims of police misconduct).

F.    *Skehan v. Village of Mamaroneck*, 465 F.3d 96 (2d Cir. 2006) (in an action involving claims of retaliation brought pursuant to the First Amendment and Equal Protection Clause, successfully obtained dismissal of the Equal Protection claim in an interlocutory appeal on behalf of the Village's Board of Trustees);

G.    *Martinez v. Port Authority of New York and New Jersey*, 01 Civ. 721, 2005 U.S. Dist. LEXIS 19141 (S.D.N.Y. Sept. 2, 2005) (co-counsel at trial and appeal in action for false arrest and malicious prosecution, jury verdict in the amount of $1.1 million dollars reduced to $464,000), *aff'd*, 445 F.3d 158 (2d Cir. 2006).

H.    *Duke v. County of Nassau*, 63 Fed. Appx. 558 (2d Cir. 2003) (in an action involving allegations of police brutality involving the killing of an unarmed citizen in which the jury awarded more than $2,000,000, successfully argued that the District Court did not err in dismissing a juror because he was a holdout);

I.    *Tolbert v. Queens College*, 242 F.3d 58 (2d Cir. 2001) (in an action against a division of CUNY, successfully argued that the District Court erred in granting judgment as a matter of law to defendants in an action

brought pursuant to Title VI);

J.   *Flores v. City of Mount Vernon*, 41 F. Supp.2d 439 (S.D.N.Y. 1999)
(obtained summary judgment on plaintiff's behalf on the grounds that the
defendants' decision to seize her and subject her to a strip search violated
her rights protected by the Fourth Amendment to the United States
Constitution, as well as established *Monell* liability against the City of
Mount Vernon--case settled mid-trial for $365,000).

10.    In addition to the work identified above, I am frequently retained by
counsel to assist them with their legal writing at both the trial and appellate levels.  I am
routinely retained by the Law Offices of Frederick K. Brewington (the "Brewington
Office") to handle their appellate matters.  For example, the Brewington Office retained
me handle appeals in *Luca* and *Zellner* to draft and argue these appeals before the Second
Circuit, and Callahan & Fusco, LLC retained my services to draft and argue the
interlocutory appeal in *Skehan*.  I have also handled scores of cases involving claims of
employment discrimination and police misconduct that ended in favorable settlements for
my clients.

11.    Michael L. Spiegel, Esq., one of the premier police misconduct attorneys
in the Southern District of New York, also routinely retains my services to assist him at
both the trial and appellate levels.  For example, in *Martinez v. Port Auth.*, *supra*, I
served as Mr. Spiegel's co-counsel at trial and on appeal in an action for false arrest and
malicious prosecution.  The jury returned a verdict in the amount of $1.1 million dollars,
which Judge Castel remitted to $464,000.  The Second Circuit affirmed Judge Castel's
decision.  *Martinez*, 445 F.3d 158 (2d Cir. 2006).

12.    In *Cameron v. City of New York*, 06 Civ. 7798 (PAC), Mr. Spiegel again
turned to me to assist him at trial.  While the jury originally returned a defendants'

verdict, we prevailed on appeal. *Cameron v. City of New York*, 598 F.3d 50 (2010). Upon retrial in September 2010, the jury returned a plaintiffs' verdict.

13.     Most recently, Mr. Spiegel retained my services in an action entitled *Barbour, et al. v. City of White Plains, et al.*, 07 Civ. 3014 (RPP), an action brought against the City of White Plains and members of its Police Department for violations of plaintiffs' rights to be free from false arrest and malicious prosecution. Originally brought in this courthouse, Judge Karas transferred it to the Manhattan courthouse for trial. Following the plaintiffs' acceptance of Rule 68 Offers of Judgment, Judge Patterson awarded plaintiffs' fees for the work I performed on their behalf at the hourly rate of $450. See *Barbour v. City of White Plains*, No. 07 Civ. 3014, 2011 U.S. Dist. LEXIS 55796 (S.D.N.Y. May 24, 2011).

14.     Accordingly, based on my experience practicing law in New York for decades, I am fully aware of the prevailing hourly rates charged by small law firms and sole practitioners, such as Mr. Watkins, located in the Southern District of New York, who specialize in federal court civil rights litigation. Indeed, since I submit Section 1988 fee requests and applications in connection with my own cases, it is incumbent upon me to be knowledgeable about prevailing rates

15.     My customary and usual rate is $450/hr. This is the rate that I charge in my civil rights retainer agreements, in the event I am to be compensated on a *quantum meruit* basis (*e.g.*, if I were to be discharged by a client who was ultimately successful in the litigation).

B. Plaintiff Should Be Fairly Compensated For The Work Performed By Mr. Watkins.

16.     In matters involving claims of civil rights, my clients are overwhelmingly

unable to afford the services of a lawyer on an hourly basis. Few, if any, have enough money to pay even a minimal retainer. I take these cases on a contingency basis, and am compensated based on the portion of any judgment or settlement obtained, or through fee petitions.

17.    Civil rights cases are often complex and almost quite risky. In my experience most trials end in verdicts for law enforcement/government officials and their respective municipal entities. Because the chances of losing civil rights cases are so real, I and my civil rights colleagues depend on the availability of a full lodestar recovery (arguably still referred to as the "presumptively reasonable rate") if we prevail. In fact, because of the risk involved in taking such cases, I do not know too many lawyers who are willing to devote a substantial part of their practice to civil rights litigation.

18.    Based upon my review of the affirmation of Mr. Watkins, and my conversations with him, this action was similar. I understand that Mr. Watkins (and Mr. Sussman), while receiving a small fee from plaintiff, reduced their contingency percentage, and otherwise represented plaintiff without compensation throughout the duration of the litigation at great personal expense to the firm. They also displayed dedication to their client, as well as respect for the judicial process.

19.    Based upon my twenty-two plus years of experience as a lawyer practicing in this field in the Southern District of New York and across the State, based on my many observations and interactions with Mr. Watkins over the years, and based upon my knowledge of prevailing rates for attorneys of his high caliber and outstanding

reputation in this district, I fully support Mr. Watkins's application for fees at the

requested hourly rate of $375.

Dated: New York, New York
       November 30, 2011

Scott A. Korenbaum